## CONFIDENTIAL SETTLEMENT AGREEMENT AND FULL RELEASE OF ALL CLAIMS

This Settlement Agreement and General Release (hereinafter referred to as "Agreement") is made and voluntarily entered into by and between Candida Palega (hereinafter referred to as "Palega"), on the one hand, and The Property Sciences Group, Inc., and its affiliated individuals and entities (collectively hereinafter referred to as "PSG") on the other hand (each hereinafter individually referred to as "Party", or collectively referred to as "Parties").

## RECITALS

**WHEREAS,** Palega was formerly employed by PSG as a Residential Staff Appraiser from approximately November 2011, through March 26, 2015; and

**WHEREAS,** on February 21, 2017, Palega filed an action before the United States District Court in and for the Northern District of California, San Francisco Division, entitled *Palega, et al. v. The Property Sciences Group, Inc.*, Case No. 3:17-cv-00855-WHA (JSC) (the "Action"), alleging causes of action for: (1) Failure to Pay Overtime in Violation of the Fair Labor Standards Act, 29 U.S.C. § 207; (2) Failure to Pay Overtime in Violation of Cal. Labor Code §§ 510, 558, 1194 and IWC Wage Order 4-2001; (3) Failure to Provide Off-Duty Meal Periods in Violation of Cal. Labor Code §§ 218.5, 226.7, 512 and IWC Wage Order 4-2001; (4) Failure to Provide Off-Duty Rest Periods in Violation of Cal. Labor Code §§ 218.5, 226.7, 512 and IWC Wage Order 4-2001; (5) Failure to Reimburse for Necessary Expenditures in Violation of Cal. Labor Code. § 2802; (6) Failure to Provide Itemized Wage Statements in Violation of Cal. Labor Code § 226; (7) Failure to Provide Wages Upon Separation of Employment in Violation of Cal. Labor Code §§ 201-203; and (8) Unfair Competition in Violation of Cal. Business & Professions Code §§ 17200 *et seq.*; and

**WHEREAS,** the Parties now wish to finally, fully, and completely resolve all issues, rights, and obligations between Palega, on the one hand, and PSG, on the other hand, arising out of Palega's employment relationship with PSG and the separation of that relationship; and

**WHEREAS,** the Parties acknowledge and agree that there is a *bona fide* and genuine dispute regarding the underlying facts giving rise to a question of whether Palega is owed any wages, overtime, double-time, reimbursement, penalties, liquidated damages, and/or interest. The Parties further acknowledge and agree that if the Palega were owed any of the aforementioned damages, there is a *bona fide* and genuine dispute regarding the amount owed; and

**NOW THEREFORE,** in consideration of the mutual promises and undertakings described herein, the Parties agree as follows:

## TERMS OF THE AGREEMENT:

## FIRST PARAGRAPH: No Admission of Liability, Wrongdoing or Damages By The Parties

As indicated in the Recitals to this Agreement, the Parties now wish to finally, fully and completely resolve all issues, rights, and obligations between them arising out of or relating to Palega's employment relationship with PSG, including but in no way limited to those issues, rights and obligations referred to as "claims" as defined herein. The furnishing of the consideration for this Agreement shall not at any time for any purpose be deemed or construed as an admission of liability or responsibility by the Parties or any of the Released Parties as defined herein. Any liability for any and all claims is expressly denied and disclaimed by the Parties and the Released Parties, as defined herein.

**SECOND PARAGRAPH: Consideration for this Agreement**

Pursuant to the terms of this Agreement, in exchange for the total gross payment of $17,500.00 (Seventeen Thousand Five Hundred Dollars and No Cents) (the "Settlement Amount"), Palega agrees to dismiss the Action with prejudice and to the covenants and promises set forth in this Agreement, including without limitation, and fully releasing and forever discharging, and promising not to sue, PSG and any of its present, former, or future owners, directors, officers, shareholders, partners, parent companies, subsidiaries, joint ventures, members, investors, subordinates, attorneys, consultants, predecessors-in-interest and/or successors-in-interest, employees, agents, servants, insurers, assigns, contractors, affiliated entities, insurers, or any other entities (collectively, the "Released Parties"). Palega further agrees to refrain for pursuing any claim or lawsuit or other proceeding or action against PSG and/or the Released Parties related to her employment with PSG, except as otherwise exempted under applicable law. Palega also agrees that the Settlement Amount shall constitute an offset for any claim that is not released by this Agreement.

In addition, PSG agrees to refrain from pursuing any claim or lawsuit or other proceeding against Palega related to her employment with PSG that have accrued up to and including the Effective Date of this Agreement, in addition to the releases otherwise set forth in this Agreement.

The Settlement Amount shall be broken into the following two payments: (1) $15,000.00 (Fifteen Thousand Dollars and No Cents) less all applicable deductions to federal, state, and local taxes and any other appropriate deductions or withholdings, paid to Palega in the following manner: 50% shall constitute back wages subject to payroll taxes and withholdings and for which PSG will furnish a W-2 to Palega, and 50% shall constitute liquidated damages for which PSG will furnish a 1099 to Palega; and (2) $2,500.00 (Two Thousand Five Hundred Dollars and No Cents) paid to Palega's attorneys, Kennedy Hodges, LLP and categorized as attorneys' fees.

The checks tendering payment of the Settlement Amount shall be delivered to Palega's attorneys, Kennedy Hodges, LLP, within thirty (30) days of the Effective Date of this Agreement, provided the following requirements are met: (a) executed IRS Form(s) W-4 and/or W-9 are provided to counsel for PSG by the payees; (b) a signed Joint Stipulation of Dismissal whereby the entire Action is dismissed with prejudice as to  PSG, is delivered to counsel for PSG, to be held until such time as the Settlement Amount has been remitted, after which it shall be filed in the Action by Palega; and (c) the court in the Action approves the settlement of any and all claims that so require it, including without limitation, claims under the Fair Labor Standards Act. In the event the Court in the Action requires judicial approval of any part of the settlement before it is deemed effective, including without limitation, the scope of the Release and the settlement of the alleged Fair Labor Standards Act claim(s), this Agreement is contingent upon satisfaction of the following requirements: (a) Palega's preparation and filing of a Motion for Approval of Settlement; and (b) judicial approval of the aforementioned Motion for Approval of Settlement. The Settlement Amount shall be paid within thirty (30) days of an Order in the Action granting that Motion for Approval of Settlement if Court approval is required. In the event the Court denies the aforementioned Motion for Approval of Settlement for any reason, the Parties shall make a good-faith effort to cure the defects highlighted by the Court in a renewed Motion for Approval of Settlement. The "Effective Date" of this Agreement shall be the date on which the Court approves the settlement in the Action.

The Parties recognize that the $15,000.00 payment to Palega constitutes back wages and liquidated damages, and that the $2,500.00 payment to Palega's attorneys constitutes attorneys' fees and costs. Palega agrees and understands that PSG will report applicable payments to her pursuant to this

4823-5229-1689.1

Agreement on IRS Form W-2, Form 1099, and any similar forms required by state law. Palega agrees that, should any taxing authority assess any taxes, penalties, or interest against either Palega or PSG as a result of the payments in this Agreement, Palega will be solely responsible for the taxes, penalties, or interest, if any, which may be owed to any governmental agency as a result of the payments.

Palega acknowledges and affirms that as of the Effective Date, she received her compensation owed, reimbursements for expenses submitted as of the Effective Date, and, accordingly, has received all monies and benefits due to her as a result of her employment with PSG as of the Effective Date of this Agreement and that the consideration provided for herein is in addition to anything else to which she would otherwise have been entitled.

Palega agrees that she will not directly or indirectly use, disclose, copy, furnish, or make accessible to anyone any trade secrets or other privileged or confidential information of PSG or the Released Parties that she obtained through or as a consequence of her employment with PSG, including without limitation, utilizing trade secrets to solicit customers of PSG, and Palega agrees that she will preserve and hold inviolate the confidentiality of the same. Palega agrees and understands that confidential information subject to this provision includes, but is not limited to: (a) any information which PSG obtained from its clients or any other person, including employees of PSG, and which PSG treats as proprietary or confidential, whether or not owned or developed by PSG; (b) any non-public information relating to a customer of PSG, such as the identity of the customer's employees, its personnel practices or procedures, business strategies or plans, financial information and plans, customer lists, marketing plans and data, profitability data, costs, expenses, proposals, or any other information that the customer maintains as confidential; (c) PSG's business strategies or plans, financial information and plans, rate lists, marketing plans and data, profitability data, costs, expenses, proposals, personnel information (such as social security numbers, birthdates, etc.), or any other information that PSG maintains as confidential; and (d) information received from third parties by PSG under confidential conditions. Palega acknowledges and agrees that confidential information subject to this provision may be in written or oral form, and may exist in the form of physical items, on computer disks or hard drives, on computer or audio or video tape, and may be typed, computer generated, or mechanically transcribed in some other fashion, or handwritten. Confidential information does not include information that is or becomes publicly known through no wrongdoing by Palega. Palega further agrees that she has destroyed, surrendered or delivered to PSG all confidential information subject to this provision or that she acquired in the course of her employment with PSG, including all records and copies thereof setting forth or referring to confidential information, and she agrees that she will not retain any copy or records of such confidential information.

Except to discuss the terms of Palega's employment as permitted by the National Labor Relations Act, Palega shall not, directly or indirectly, at any time communicate with any current PSG employees in any conversation, letter, phone call, text message, social media message, or other communication regarding her claims alleged, or that could have been alleged, in the Action. Additionally, for a period of twelve (12) months after the Effective Date of this Agreement, Palega shall not, directly or indirectly, induce, solicit, encourage, recruit, or otherwise make affirmative conduct with any current PSG employees to leave their employment with PSG. Nothing in this paragraph shall prevent Palega from discussing the terms of her employment as permitted by the National Labor Relations Act.

Palega agrees and understand that PSG or any of its affiliated companies or its successors in interest shall have the right to refuse to hire Palega or otherwise contract with Palega for contingent work.

Palega's agreement to forgo seeking employment with or placement as a contingent worker for PSG or any of its affiliated companies or their successors-in-interest, if any, and obligations assumed in connection therewith are referred to hereinafter as "Other Consideration," collectively.

### THIRD PARAGRAPH: Forbearance of the Right to Seek Damages Or Other Remedy Against PSG

Palega, for herself and her heirs, representatives, executors, administrators, successors and assigns, and each of them, both individually and in any representative capacity, promises and agrees that she will not open or initiate or participate as a class member in any action which seeks the recovery of damages or any other legal or equitable remedy based on, arising from or connected with the allegations, claims and/or causes of action which were or are related in any way to his or her employment with PSG, or any other relationship with PSG. Palega acknowledges that this forbearance is a material inducement to PSG's decision to enter into this Agreement and pay the consideration herein.

Neither the release provisions herein nor anything else in this Agreement limits Palega's rights to file a charge with any administrative agency (such as the U.S. Equal Employment Opportunity Commission or a state fair employment practices agency), provide information to an agency, or otherwise participate in an agency investigation or other administrative proceeding. Palega further acknowledges and agrees that the consideration set forth in this Agreement shall constitute full payment and consideration for the release and giving up of Palega's rights to any money or other individual relief based on any agency or judicial decision, including class, representative, or collective action rulings, except that Palega may receive money properly awarded by the U.S. Securities and Exchange Commission as a securities whistleblower incentive.

In addition, PSG agrees to refrain from pursuing any claim or lawsuit or other proceeding against Palega related to her employment with PSG that have accrued up to and including the Effective Date of this Agreement, in addition to the releases otherwise set forth in this Agreement.

Any challenge to this Paragraph shall be decided in accordance with the Twenty-Third Paragraph.

### FOURTH PARAGRAPH: Release (Waiver and Release)

Palega understands and agrees that this is a complete and general release (subject to Court approval). In exchange for the promises made by PSG in this Agreement, Palega, for herself and her spouse, heirs, representatives, executors, administrators, successors and assigns, and each of them, both individually and in any representative capacity, hereby absolutely and forever waivers, releases, and forever discharges and promises not to sue PSG and/or the Released Parties with respect to any and all claims (which term is defined as including, but is not limited to causes of action, suits, debts, sums of money, controversies, agreements, promises, damages, costs, losses, expenses, and demands whatsoever, at law or in equity, or before any federal, state, or local administrative agency, whether known or unknown, whether accrued or un-accrued, whether contingent or certain) which Palega now has, or any claims whatsoever which may accrue on account of the events, circumstances, or occurrences related to Palega's employment, contractual, or other relationship with PSG, or her separation from employment with PSG, up to and including the effective date of this release. In the event the Court disapproves or otherwise requests modification of the scope of this Release, the Parties shall make a good-faith effort to cure the defects highlighted by the Court.

With respect to these claims, this term is defined in this Agreement to include all charges, claims, complaints, rights, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred by Palega, if any, except as otherwise provided for in this Agreement) of any nature whatsoever, known or unknown, suspected or unsuspected, direct or derivative, which Palega now has or claims to have, or which Palega at any time heretofore had or claims to have had, or which Palega at any time hereafter may have or claim to have against PSG, and/or Released Parties, and each of them, arising out of or related to Palega's employment with PSG prior to the last date this Agreement is executed by any Party**,** including, without limitation, any event, fact, act, omission or cause which relates to, or arises from, any relationship between the Parties, including specifically those connected with Palega's employment or other relationship with PSG.

The claims released under this Agreement ("Released Claims") include, but are not limited to:

1.  Any rights arising out of any alleged violation of any employment contract or other contract, express, implied or quasi-contract;

2.  Wrongful termination in violation of public policy or constructive termination;, fraud, promissory fraud, false pretenses, assault and battery, defamation (including libel and slander), intentional and/or negligent infliction of emotional distress;

5.  Any federal, state or other governmental statute, regulation, constitutional provision or ordinance, including, without limitation:

    a.  Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (governing discrimination, harassment and retaliation on the based on sex, race, color, religion, gender and/or national origin);

    b.  Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.* (governing discrimination based on race);

    c.  Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.* (governing discrimination based on mental or physical disability.

    d.  The California Fair Employment and Housing Act, Government Code, section 12940, *et seq.* ("FEHA"), and Unruh Civil Rights Act, Civil Code, section 51, *et seq.* (governing discrimination, harassment or retaliation based on actual or perceived sex, race, color, national origin, ancestry, physical or mental disability, medical condition, marital status, sexual preference, political affiliation, gender and/or age, and including the right to maintain a safe work environment);

    e.  The California Labor Code, including without limitation, section 200, *et seq*. and California Industrial Welfare Commission orders regarding wage and hour laws;

    f.  The Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.;

    g.  The Consolidated Omnibus Budget Reconciliation Act of 1985, 42 U.S.C. § 1395(c);

    h.  The Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*.;

i. Any applicable California Industrial Welfare Commission order, as well as any other laws or orders issued by any other governmental agencies or entities concerning such matters;

j. The federal Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*;

k. The California Family Rights Act, Government Code, section 12945.1, *et seq.*;

l. The California Business and Professions Code, section 17200, *et seq.*;

m. The Age Discrimination in Employment Act (ADEA) and the Older Workers' Benefits Protection Act (OWBPA);

n. The Uniform Services Employment and Reemployment Act (USERRA), 38 U.S.C. § 4301, *et seq.*;

o. California Labor Code section 970; and

p. Any other federal, state, or local law, regulation, policy, or statute governing Palega's employment with PSG.

Nothing in this Agreement shall be construed to mean that PSG or Palega are waiving or releasing claims to enforce this Agreement or claims arising after the Effective Date Agreement. This release does not apply to any obligations by PSG with regard to Palega arising from or in connection with California Labor Code Section 2800 *et seq.* With regard to any request for reimbursement of reasonable and appropriate expenses incurred in the course of his or her employment with PSG, Palega affirms that all expenses for which she could have sought reimbursement have been reimbursed to him or her as of the Effective Date of this Agreement.

Palega acknowledges that she is knowingly and voluntarily waiving and releasing any rights she may have under the Age Discrimination in Employment Act of 1967 ("ADEA") and the Older Workers' Benefits Protection Act ("OWBPA"). She also acknowledges that the consideration given for the waiver and release set forth in this Agreement is in addition to anything of value to which she was already entitled. Palega further acknowledges that she has been advised by this writing, as required by the OWBPA, 29 U.S.C. §626(f)(2)(A) and (B), that: (a) her waiver and release does not apply to any rights or claims that may arise after the Effective Date of this Agreement; (b) she should consult with an attorney prior to executing this Agreement; (c) this waiver does not restrict Palega from filing a charge with the Equal Employment Opportunity Commission ("EEOC"); (d) this agreement is between an employer and employee; and (e) Palega has been given a "reasonable amount of time" to consider the effect of the release before signing. Palega is further informed and understands that if she is 40 years of age or older as of the Effective Date of this Agreement, she may revoke the release and waiver of claims pertaining solely to claims under the ADEA or OWBPA within seven (7) days of the Effective Date of this Agreement. Any such revocation shall pertain solely as to claims under the ADEA or OWBPA. Palega understands that revocation shall not affect any other claims released under this Agreement nor shall revocation affect the remaining provisions of this Agreement.

In addition, as a material term for this Agreement, PSG agrees to a general and full release of any and all claims of any nature and type that it may have against Palega as of the Effective Date of this Agreement. This release includes a release of all claims, known and unknown.

**SIXTH PARAGRAPH: <u>Knowing and Voluntary Waiver of Unknown Claims</u>**

4823-5229-1689.1

Palega waives and releases all claims against PSG and the Released Parties that he or she knows about and those he or she may not presently know about, based on conduct and events occurring prior to the Effective Date of this Agreement, to the full extent permitted by law.

Moreover, PSG waives and releases all claims against Palega that it knows about and those it may not presently know about, based on conduct and events occurring prior to the Effective Date of this Agreement, to the full extent permitted by law.

As a result, the Parties expressly waive and release all rights and benefits afforded to them pursuant to California Civil Code, Section 1542 ("Section 1542") and any similar law, statute or regulation in California or any other state which may be deemed to govern their rights and obligations with respect to the waiver and release of known and unknown claims, if any ("Similar Statute").

By signing this Agreement, the Parties represent and agree that they understand the significance of the waiver and release of all rights otherwise available to them under Section 1542 and any similar statute.

Section 1542 states as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Thus, notwithstanding the provisions of Section 1542 or any similar statute, and for the purpose of implementing a full and complete waiver and release of the claims described herein, Palega expressly acknowledges that this Agreement is intended to include in its effect, without limitation, all respective claims defined in this Agreement about which he or she presently knows as well as those claims about which he or she may not presently be aware of or know.

**SEVENTH PARAGRAPH:** **No Attorneys' Fees or Costs; Palega's Agreement to Indemnify PSG and the Released Parties from Any and All Claims for Attorneys' Fees and Costs**

Each Party will bear its own attorney's fees and costs in connection with the matters set forth in this Agreement and the assertion of any claims following its execution, except as otherwise provided in this Agreement. Palega further acknowledges and agrees that he or she shall not be considered a prevailing party in any Court Action as that term is defined in the FEHA (Gov't. Code § 12965(b)) or Business and Professions Code, section 17200, *et seq.*, or any other statute allowing a prevailing party to recover his or her attorneys' fees and costs in connection with any matters set forth in this Agreement nor the assertion of any claims released herein.

Palega further agrees to indemnify and hold PSG and Released Parties, and each of them, harmless from any and all such claims, demands, and liabilities for attorneys' fees and costs incurred by or on behalf of Palega in connection with any such claims except as to those fees provided for in this Agreement. Such indemnification shall not include any claims made as part of any Class or Collective Action to which Palega may be considered a putative class member based on the class definition and for which Palega is not a representative party, on condition that Palega does not affirmatively opt-in to any such action. Such indemnification also shall not include any claims for attorneys' fees and/or costs made on behalf of Palega as a result of an action to enforce this Agreement.

**EIGHTH PARAGRAPH:** **Confidentiality and Non-Disparagement**

Palega agrees that she will not disclose, disseminate, and/or publicize, or cause or permit to be disclosed, disseminated, or publicized any of the terms of this Agreement except: (1) to the extent

necessary to report income to appropriate taxing authorities; (2) to members of her immediate family; (3) in response to an order of a court of competent jurisdiction or subpoena issued under the authority thereof; (4) to her counsel, accountants, or other financial planners as needed; or (5) in response to any formal or informal inquiry of, or subpoena issued by, a state or federal governmental agency. In response to any inquiry not covered under the aforementioned categories that pertains to the Action or Palega's claims otherwise, Palega shall respond to the effect of: "The matter has been resolved."

Palega agrees to take no action which is intended, or would reasonably be expected, to materially harm or damage PSG or Released Parties, including without limitation, making derogatory and/or disparaging remarks about, or otherwise harming the reputation of, PSG or the Released Parties, or which would reasonably be expected to lead to unwanted or unfavorable publicity to PSG or the Released Parties.

PSG agrees to take no action which is intended, or would reasonably be expected, to materially harm or damage Palega, including without limitation, making derogatory and/or disparaging remarks about, or otherwise harming the reputation of Palega, or which would reasonably be expected to lead to unwanted or unfavorable publicity to Palega.

Any breach of this provision shall constitute a material breach of this Agreement. Liquidated damages of $17,500.00 (Seventeen Thousand Five Hundred Dollars and No Cents), or the actual proven damages, whichever is greater, will apply to each and any proven breach of the Confidentiality and Non-Disparagement provision of this Agreement. The prevailing party on any such action will be further entitled to its attorneys' fees and costs for any proven breach of this provision of this Agreement.

**NINTH PARAGRAPH: Notice to Consult an Attorney, Consultation with Attorney and Adequate Time to Consider Agreement**

Palega represents and agrees that she has been notified of her right to consult with an attorney of her choice prior to signing this Agreement to obtain legal advice regarding the nature and scope of the terms of this Agreement and the rights waived and released herein by him.

Palega further represents and agrees that she has been given a sufficient, reasonable period of time to consider carefully all of the terms of this Agreement, including any period of time mandated by statute, and, to the extent Palega may execute this Agreement prior to the expiration of any statutory mandated period of time, agrees she does so willingly and knowingly waiving any such waiting period.

**TENTH PARAGRAPH: Entire Agreement**

This is the entire Agreement between the Parties and, as such, fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter addressed in this Agreement. The Parties make no promises to one another other than those in this Agreement.

**ELEVENTH PARAGRAPH: Severability**

The terms and provisions of this Agreement are severable, existing separately from one another, and if any part of the Agreement is found to be unenforceable, the other terms, provisions and paragraphs, or any portion thereof, will remain fully valid and enforceable. This Agreement will survive the termination of any term, provision or paragraph, or any portion thereof, contained herein which may be deemed to be void or unenforceable.

**TWELFTH PARAGRAPH: Ownership of claims**

Palega represents and agrees that she has not assigned or transferred, or attempted to assign or transfer, to any person or entity, any of the claims she is waiving and releasing in this Agreement. Palega agrees to defend, indemnify and hold harmless PSG from and against any claim, demand, damage, debt, liability, account, reckoning, obligation, cost, expense, lien or action or cause of action (including payment of attorneys' fees and costs actually incurred, whether or not litigation is commenced), based on, in connection with, or arising out of any assignment or transfer or purported assignment or transfer by Palega of any of the claims waived and released by this Agreement.

### THIRTEENTH PARAGRAPH: Good Faith Efforts

Palega agrees to cooperate in good faith and to do all things reasonably necessary to effectuate the terms and conditions of this Agreement.

### FOURTEENTH PARAGRAPH: Further Action Necessary

Palega agrees to take further action, if necessary, including the execution and delivery of any additional document(s) and materials, reasonably required to effectuate the terms and conditions of this Agreement.

### FIFTEENTH PARAGRAPH: Warranty of Authority

Each person executing this Agreement on behalf of a Party hereto warrants and represents that she/he/it is duly authorized to execute this Agreement on behalf of such Party.

### SIXTEENTH PARAGRAPH: Successors and Assigns

The Parties represent and agree that the terms of this Agreement will be binding on one another, their respective heirs, administrators, executors, successors and assigns.

### SEVENTEENTH PARAGRAPH: Governing Law, Attorneys' Fees

This Agreement is made and entered into in the State of California and will in all respects be interpreted, enforced and governed under the laws of the State of California. In the event that any legal proceedings or actions are required in order to enforce the terms of this Agreement, the prevailing party will be entitled to recover an award of reasonable attorney fees and costs.

### EIGHTEENTH PARAGRAPH: Written Notice to the Parties

The Parties agree that any written notice(s) which are required to be given pursuant to this Agreement will be given/delivered by personal delivery, overnight delivery, certified mail/return receipt requested or regular mail posted in the United States mail, to the following persons at the following addresses, on behalf of each Party respectively:

**Palega:**   Candida Palega
c/o: Galvin Kennedy
Kennedy Hodges, LLP
4409 Montrose Blvd., Ste. 200
Houston, TX 77006
E-mail: gkennedy@kennedyhodges.com
Tel. (713) 523-0001
Fax: (713) 523-1116

4823-5229-1689.1

**PSG:**      The Property Sciences Group, Inc.
c/o: Jordon R. Ferguson
Manning & Kass
Ellrod, Ramirez, Trester LLP
19800 MacArthur Blvd., Suite 900
Irvine, CA 92612
E-mail: jrf@manningllp.com
Tel: (949) 440-6690
Fax: (949) 474-6991

The written notice(s) will be deemed to have been made or given effect as of the date of personal delivery to the Party or the person(s) apparently in charge at the address(es) indicated above or on the date of posting for overnight, certified or regular mail or, if sent by facsimile transmission, on the date of the facsimile acknowledgment of receipt thereof. Further, if the notice is sent by facsimile, the sending Party will telephone and notify the receiving Party that a facsimile transmission is being sent. Each Party bears the responsibility of providing the other Parties with written notice of a change in that Party's address as indicated above, as soon as practical before or after the change in address. Notices not sent in accordance herewith will be deemed void and without effect.

### NINETEENTH PARAGRAPH: No Representations

Palega represents and agrees that no promises, statements or inducements have been made to her which caused her to sign this Agreement other than those expressly stated in this Agreement.

### TWENTIETH PARAGRAPH: Proper Construction

The language of all parts of this Agreement will in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties.

As used in this Agreement, the term "or" will be deemed to include both the disjunctive and conjunctive and, accordingly, will be read to include the terms "and/or."

The singular and plural number will be deemed to include the other whenever the context so indicates or requires.

The paragraph headings used in this Agreement are intended solely for convenience of reference and will not in any manner add to, limit, modify or otherwise be used in the interpretation of any of the provisions of this Agreement.

None of the Parties shall be deemed to be the drafter of this Agreement, but it shall be deemed that this Agreement was jointly drafted by all of the Parties. The terms of this Agreement shall not be interpreted or construed in favor of or against any Party.

### TWENTY-FIRST PARAGRAPH: Execution of Agreement

This Agreement may be executed in counterpart originals. Facsimile and email copies are to be treated as originals.

### TWENTY-SECOND PARAGRAPH: Modifications of Agreement

Neither this Agreement nor any provision herein can be modified, amended or waived except by means of a written instrument signed by both Palega and PSG.

4823-5229-1689.1

**TWENTY-THIRD PARAGRAPH:** **Breach of Agreement**

Palega and PSG agree that in the event of breach of this Agreement the prevailing party shall be entitled to attorneys' fees and costs. The Parties agree that Judge Alsup of the United States District Court for the Northern District of California, San Francisco Division, shall retain jurisdiction over any actions to enforce the terms of this Agreement.

**(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)**

**TWENTY-FOURTH PARAGRAPH: Medicare Reporting**

Palega warrants that she is not a Medicare beneficiary as of the Effective Date of this Agreement and therefore no conditional payments have been made by Medicare. Palega agrees to indemnify, defend, and hold PSG and the Released Parties harmless from any and all claims, demands, liens, Medicare conditional payments and rights to payment known or unknown only as related to Medicare payments. This indemnification obligation as related to Medicare payments includes all damages, double damages, fine, penalties, attorneys' fees, costs, interest, expenses, and judgments incurred by or on behalf of PSG and the Released Parties.

**PLEASE READ THIS AGREEMENT CAREFULLY. IT CONTAINS A RELEASE AND WAIVER OF KNOWN AND UNKNOWN CLAIMS.**

**CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND GENERAL RELEASE. BY SIGNING THIS AGREEMENT AND GENERAL RELEASE, YOU GIVE UP AND WAIVE IMPORTANT LEGAL RIGHTS INCLUDING THE RIGHT TO TRIAL BY JURY.**

**THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ THIS AGREEMENT, UNDERSTAND IT AND ARE VOLUNTARILY ENTERING INTO IT.**

**ACCEPTED AND AGREED TO BY:**

Executed at ___Hayward___, ___Ca___, this ___15___ day of ___June___, 2018.
　　　　　　　　[CITY]　　　　[STATE]　　[DAY]　　　　　[MONTH]

_Candida Palega_
DocuSigned by:
A783782509D449D...

Candida Palega

Executed at ___Pleasant Hill___ [CITY], California, this __13__ day of June, 2018.

THE PROPERTY SCIENCES GROUP, INC.

By: _____

Name: David Kim
Title: Vice President, Residential Division, The Property Sciences Group, Inc.

4823-5229-1689.1

**APPROVED AS TO FORM:**


Dated:_____          KENNEDY HODGES, LLP


                                       By: _____
                                       Galvin Kennedy
                                       William Hogg
                                       Attorney for Plaintiff Candida Palega


Dated:_____          MANNING & KASS
                                       ELLROD, RAMIREZ, TRESTER LLP


                                       By: _____
                                       Jordon R. Ferguson
                                       Attorneys for Defendant
                                       The Property Sciences Group, Inc.

DocuSign Envelope ID: 09FE816C-0DDA-42F2-A47E-8CAABFE188D0

**APPROVED AS TO FORM:**

Dated:  6/20/2018                    KENNEDY HODGES, LLP

                                     By: _____
                                     Galvin Kennedy
                                     William Hogg
                                     Attorney for Plaintiff Candida Palega


Dated:  6/20/18                      MANNING & KASS
                                     ELLROD, RAMIREZ, TRESTER LLP

                                     By: _____
                                     Jordon R. Ferguson
                                     Attorneys for Defendant
                                     The Property Sciences Group, Inc.

4823-5229-1689.1